Rachel V. See, Esq.
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-3848

Counsel for Applicant

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------

**NATIONAL LABOR RELATIONS BOARD,**

        Applicant,

  v.                                                                                    USDJ Colleen McMahon
                                                                                      15– MC–00322–P1

**MCDONALD'S USA, LLC,**

        Respondent.

------------------------------------------------------------------------

**REPLY IN SUPPORT OF THE NATIONAL LABOR RELATIONS BOARD'S
APPLICATION FOR AN ORDER REQUIRING OBEDIENCE
TO ADMINISTRATIVE SUBPOENA *DUCES TECUM* B-1-L39K3Z**

i

# TABLE OF CONTENTS

I. MCDONALD'S INCORRECTLY SUGGESTS ITS "FINANCIAL EXPOSURE" DRIVES THE PROPORTIONALITY ANALYSIS. .................................................................. 1

II. MCDONALD'S IS WRONG ABOUT "PRE-TRIAL" DISCOVERY IN NLRB PROCEEDINGS. ........................................................................................................ 3

III. MCDONALD'S MISCHARACTERIZES THE SELECTION AND NATURE OF THE INITIAL 28 ESI CUSTODIANS. ...................................................................... 3

A. McDonald's Overstates the General Counsel's Participation in the Selection of the Initial 28 ESI Custodians. .................................................................................... 4

B. The Front-Line Personnel Unilaterally Selected by McDonald's as ESI Custodians Are Not Representative. ................................................................................................ 5

IV. MCDONALD'S POSITION REGARDING R2D2 REPORTS ILLUSTRATES THE INCONSISTENCY OF ITS POSITIONS. .......................................................... 7

V. ALREADY-PRODUCED OPERATIONS CONSULTANT EMAILS ILLUSTRATE THE RELATIONSHIP BETWEEN MCDONALD'S AND ITS FRANCHISEES. ................ 7

VI. MCDONALD'S ASSERTIONS REGARDING ITS PRODUCTION IGNORE THE BREADTH OF ITS UNNECESSARY (AND LIKELY COSTLY) REDACTIONS .... 9

# **TABLE OF AUTHORITIES**

**Cases**

*Eisenberg v. Wellington Hall Nursing Home*, 651 F.2d 902 (3d Cir. 1981) ................................. 2

**Other Authorities**

*The Sedona Conference Commentary on Proportionality* (January 2013) ..................................... 2

**Rules**

Fed. R. Civ. P. 26 (December 2015 Amendments) advisory committee's note ............................. 2

**NLRB Cases**

*Arlington Ridge Dev. Co.*, 203 NLRB 787 (1973) ........................................................................ 3
*CNN America, Inc.*, 353 NLRB 891 (2009) (2 member Board) ..................................................... 3
*Kentucky River Medical Center*, 352 NLRB 194 (2008), enfd. 557 F.3d 301 (6th Cir. 2009) ....... 3
*Operating Engineers Local 825 (Building Contractors)*, 272 NLRB 186 (1984) .......................... 3

As detailed in the Memorandum of Law of the National Labor Relations Board (the "NLRB" or "Board"), the Subpoena before this Court was issued in a consolidated action involving seven separate complaints based upon 75 unfair labor practice charges filed against Respondent McDonald's USA, LLC ("McDonald's") and 29 of its franchisees as well as one corporate-owned store.  Given the scope of the claims and the nature of the common factual and legal issues presented for trial, the Subpoena is unremarkable considering the consolidated posture of the case, *i.e.*, the documents and ESI requested by the Subpoena are not duplicative or unreasonable because their production would be necessary whether the case was prosecuted in a single consolidated proceeding or numerous separate ones.

McDonald's Opposition does not and cannot refute the Board's thoroughly demonstrated right to enforcement of its trial subpoena.  Without an order from this Court granting the Board's application, McDonald's will frustrate the NLRB's ability to enforce the law by: (1) withholding relevant, key evidence regarding its relationship with 26 of 29 of the charged franchisees; (2) withholding reports that demonstrate the extent of its involvement in staffing and scheduling decisions made by the 29 charged franchisees; and (3) extensively and unnecessarily redacting documents without justification in law.

**I.      McDonald's Incorrectly Suggests Its "Financial Exposure" Drives the Proportionality Analysis.**

McDonald's miscasts how the Court should evaluate its asserted burden under a Rule 26 proportionality analysis, focusing only on McDonald's current estimates of "financial exposure" while ignoring its earlier claims about the significance of the issues at stake in this case.  During the administrative investigation, McDonald's acknowledged the importance of those issues, claiming that if it were "ultimately found to be a joint employer[,] the impact on franchisors everywhere will be devastating and, on the economy, only slightly less so."  (Letter from

1

McDonald's counsel Willis J. Goldsmith to NLRB Associate General Counsel Barry J. Kearney, p. 14 (Oct. 3, 2013), attached as Exh. 1 to the Declaration of James Rucker ("Rucker Declaration").)  This claim, while hyperbolic, belies McDonald's assertion to this Court that its "total financial exposure" is "around $50,000," (*see* McDonald's USA, LLC's Opposition to Application for an Order Enforcing Administrative Subpoena Duces Tecum B-1-L39K3Z ("McDonald's Opp."), and confirms the significance of the issues presented for trial.

     McDonald's also ignores the NLRB's singular role in serving the public interest.  Acting through its General Counsel, the NLRB has exclusive authority to prosecute claims of unfair labor practices, and it does so not as a private litigant, but rather to effectuate the public policies and interests served by the NLRA.  For example, "[w]hen the Board files an application for [relief under Section 10(j) of the NLRA] it is not acting on behalf of individual employees, but in the public interest." *Eisenberg v. Wellington Hall Nursing Home*, 651 F.2d 902, 906–907 (3d Cir. 1981).  Given (i) McDonald's previous admissions about the importance of the issues at stake and (ii) the NLRB's role in this matter, the Court should reject McDonald's invitation to focus only on its claimed "total financial exposure" in assessing McDonald's claims of undue burden in applying the well-settled principles of proportionality.  *See The Sedona Conference Commentary on Proportionality* (January 2013) at 13 ("In civil actions deriving from … statutorily created rights….nonmonetary factors may favor broader discovery.").  *See also* Advisory Committee Notes to Fed. R. Civ. P. 26 (December 2015 Amendments) ("It also is important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors... Many other substantive areas also may involve litigation that seeks relatively small amounts of money, or no money at all, but that seeks to vindicate vitally important personal or public values.").

**II.     McDonald's Is Wrong about "Pre-Trial" Discovery in NLRB Proceedings.**

McDonald's is also mistaken in its often-cited claim that cases before the NLRB do not involve pre-trial discovery. The NLRA unquestionably authorizes subpoenas for documents relevant to the issues presented for trial. As the Administrative Law Judge ("ALJ") in the underlying proceeding explained in her May 19 Order,

> [T]he Board looks to the [Federal] Rules and to processes utilized by the federal courts in order to effectively adjudicate specific issues involving the production of documents and ESI pursuant to subpoena. See, e.g., *CNN America, Inc.*, 353 NLRB 891, 896 (2009) (2 member Board)…Particularly in large, complicated cases such as the instant case, and in cases involving the production of significant amounts of ESI, traditional Board practices must be tailored to optimize an efficient and orderly trial presentation for all parties.

(Appl. Exh. 25, p. 2.) By asking that the trial be adjourned in order to allow for the production of subpoenaed materials, that is precisely what the General Counsel requested.

McDonald's is simply wrong when it suggests this practice is somehow improper or even atypical in complex cases. NLRB Administrative Law Judges routinely postpone hearings (with Board approval) to provide parties an opportunity to review documents produced pursuant to subpoena or to accommodate subpoena enforcement actions. *See, e.g.*, *Kentucky River Medical Center*, 352 NLRB 194, 199 (2008) (adjourning hearing 39 days to allow respondent to subpoena witnesses and documents for presentation of its case), enfd. 557 F.3d 301 (6th Cir. 2009); *Operating Engineers Local 825 (Building Contractors)*, 272 NLRB 186, 189 n.3 (1984) (adjourning hearing to allow General Counsel to inspect and summarize subpoenaed documents); *Arlington Ridge Dev. Co.*, 203 NLRB 787, 787 (1973) (adjourning hearing to allow General Counsel to review subpoenaed documents).

**III.    McDonald's Mischaracterizes the Selection and Nature of the Initial 28 ESI Custodians.**

McDonald's further asserts that the General Counsel is already receiving an "adequate" and "reasonable sample of the front-line McDonald's personnel . . . who interface" with each

franchisee, (McDonald's Opp. at 14), but its own production belies this contention. McDonald's does not and cannot contest the NLRB's showing that McDonald's is refusing to produce relevant, key evidence regarding its relationship with 26 of the 29 charged franchisees. Indeed, McDonald's has almost entirely refused to produce documents in response to those specific Subpoena requests directed to communications between Operations Consultants and the charged franchisees.[1] (Appl. Exh. 8a (Subpoena) at ¶¶ 3, 11, 15, 36, 39, 48, 50, 56, 58, 75, 79, 83, 99, 100, 103, 104, 105, 106, and 109.). As discussed below, the limited roster of 28 ESI custodians unilaterally selected by McDonald's is demonstrably inadequate and does not begin to qualify as a representative sample for purposes of compliance with the subpoena.

**A. McDonald's Overstates the General Counsel's Participation in the Selection of the Initial 28 ESI Custodians.**

After initially asserting that responding to the General Counsel's Subpoena required collection from at least 240 custodians, (Appl. Exh. 9a, p. 20), and after being ordered to meet-and-confer with the General Counsel regarding the scope of its ESI production, (Appl. Exh. 12, p. 11), on March 26, 2015, McDonald's unilaterally identified and selected 28 custodians it believed possessed responsive documents and ESI. Contrary to McDonald's' suggestion, this selection was made without any input from the General Counsel. On March 27, 2015, Counsel for the General Counsel wrote to document his understanding that while the General Counsel was receptive to McDonald's suggestion regarding the initial custodians, later-identified

---

[1] Likewise, Paragraphs 109–110, 112–113, and 115–118 of the Subpoena seek documents and ESI relating to McDonald's coordinated response to the fast food workers' campaign. McDonald's has, nearly nine months after receiving the Subpoena, failed to produce a single page it designates as responsive to any of those paragraphs. In this light, McDonald's characterization of its Subpoena responses as "overwhelming[] compli[ance]" suggests a rather idiosyncratic approach to meaning.

concerns about the use of predictive coding (and the way the predictive coding algorithms would be trained) suggested a different approach:

> I suggest we defer agreement on the key ESI custodian set until we engage in further disclosure and cooperation. I believe the parties will be in a much better position to agree on an appropriate custodian set for ESI search using predictive coding once the General Counsel has had an opportunity to review (1) the list of the 240 custodians (by name and job title) you initially identified as potentially possessing relevant evidence and (2) the organizational chart asked for in paragraph one of the General Counsel's subpoena.

(Appl. Exh. 13.) In response, in its letter of March 29, 2015, McDonald's said it had decided not to use predictive coding. (Appl. Exh. 14, p. 2.) McDonald's never disclosed the names of the 240 custodians and, indeed, refused to disclose even the job titles for those custodians until ordered to do so by the ALJ. (Appl., ¶ 30 and Exh. 27 at 202:12.) (Of course, under this Court's rules governing electronic discovery, prior to the Rule 16 conference date, the parties must exchange "a list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities.")

### B. The Front-Line Personnel Unilaterally Selected by McDonald's as ESI Custodians Are Not Representative.

As part of its unilateral selection of the initial 28 ESI custodians, McDonald's included only six Operations Consultants, also known as "Field Service Consultants," responsible for maintaining the day-to-day relationship between McDonald's and its franchisees. According to McDonald's, (McDonald's Opp. at 15–16), those six custodians dealt with only 10 of the 29 charged franchisees in this case; as of October 16, 2015, McDonald's had produced a total of 462 emails from the files of these six custodians. Even a cursory examination of the actual production for the six Operations Consultants selected by McDonald's demonstrates that these custodians cannot be deemed representative of the front-line communications between McDonald's and the 29 charged franchisees.

For instance, the Operations Consultant McDonald's selected as "representative" for the eleven franchisee facilities in the New York metropolitan area, Anthony Cruz, was not even assigned to a single one of those franchisees for two of the three years covered by the Subpoena. McDonald's produced Mr. Cruz's resume on October 2, 2015, the day after the instant application for enforcement was filed, and that resume indicates Mr. Cruz was not even an Operations Consultant until January 6, 2014. (The Subpoena seeks production of responsive information from January 1, 2012 through December 31, 2014.)

Similarly, McDonald's has produced only thirty documents from the files of Edit Dolce, one of the Operations Consultants assigned to charged franchisee Jo-Dan MadAlisse LTD, LLC. Of those, seven are blank, four are logos, one consists of directions to the Blue Bell, PA corporate offices, and three are email messages from 2005 and 2009, *i.e.*, beyond the scope of the Subpoena. Another four are heavily redacted spreadsheets.

McDonald's selection for the charged Chicago franchisees is similarly flawed. Although the General Counsel identified at least eleven different Operations Consultants assigned to the thirteen charged franchisees in the Chicago area during the relevant period, McDonald's chose to produce documents from only one of them, Anthony Redel, and has provided from his files only three email messages sent before May 19, 2014. In other words, McDonald's has produced no Operations Consultant communications for its Chicago-area franchisees for roughly 130 of the 156 weeks covered by the Subpoena.

In the table on pages 15–16 of its Opposition brief, McDonald's attempts to conceal these shortcomings by including Field Service Managers and Human Resources Directors in its chart pairing custodians with charged franchisees. But McDonald's does not contest that its allegedly "reasonable sample" omits numerous Operations Consultants as well as all of the Human

Resources Consultants who dealt directly with the 29 charged franchisees. Nor does McDonald's concede that the communications of any of its purported "representative sample" of Operations Consultants can be used to illustrate its relationship with any other of the charged franchisees. In short, McDonald's omission of numerous Operations Consultants and its wholesale refusal to include any Human Resources Consultants as ESI custodians deprives the General Counsel of substantial evidence relevant to the joint employer allegations.

IV.     **McDonald's Position Regarding R2D2 Reports Illustrates the Inconsistency of Its Positions.**

In contesting the General Counsel's request that it produce Regional Restaurant Data Diagnostics ("R2D2") reports for the charged franchisees, McDonald's contends that it should not have to generate these reports because its front-line personnel, *i.e.*, Operations Consultants or their immediate supervisors, *may* have retained certain franchisee R2D2 reports in their email or other electronic files. Indeed, the overwhelming majority of the ESI produced from the files of "representative" custodians Anthony Cruz, Sheila Capua, and Anthony Redel consist of these reports and auto-generated transmittal emails: 2,187 of the 2,444 total documents produced for Mr. Cruz, 781 of the 982 documents produced for Ms. Capua, and 1,503 of the 1,854 documents produced from Mr. Redel's files. Yet McDonald's argues that it should not have to go through the process of running (or re-creating) the reports from the underlying data, while simultaneously arguing that it should not have to look for existing reports that may be in its possession.

V.      **Already-Produced Operations Consultant Emails Illustrate the Relationship between McDonald's and Its Franchisees.**

McDonald's claims the General Counsel has not made a "particularized showing" that its existing production "contains anything of use" for the General Counsel. (McDonald's Opp. at 17.) Despite insinuation regarding the reasons for the need for this Court to oversee the subpoena enforcement process, McDonald's does not actually contest that the Subpoena is

7

lawful or was issued for a legitimate purpose. (*Compare* NLRB Memorandum of Law at 21 *with* McDonald's Opp. at 10–11.) And in her March 19 Order, the ALJ found that the documents and ESI sought by the General Counsel's Subpoena were relevant to whether McDonald's was a joint employer of the employees in question. (App. Exh. 12; *see also* NLRB Memorandum of Law at 20.)

Further, several emails produced to date illustrate the level of control McDonald's' Operations Consultants exerted over franchisee labor relations. For example, MCDNLRB042809, attached as Exhibit 2 to the Rucker Declaration, is an email dated July 7, 2014, produced from the files of Field Service Manager Diane Clinton. It was originally sent by Ed Radke, the Operations Consultant assigned to charged franchisee MaZT in Sacramento. (Appl. Exh. 14, p. 3.) █████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
███████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████

(Rucker Declaration, Exh. 2.) Similarly, MCDNLRB042761, attached as Exhibit 4 to the Rucker Declaration, is an email dated July 12, 2014, produced from Ms. Clinton's files and sent by Mr. Radke to a similar list of individuals. In it, he writes:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



(Rucker Declaration, Exh. 4.)  Certainly, these comments illustrate the relationship McDonald's has with these franchisees, and satisfy the (incorrect) test McDonald's proposes, *i.e.*, that its production "contains anything of use" to the General Counsel.

## VI.     McDonald's Assertions Regarding Its Production Ignore the Breadth of Its Unnecessary (and Likely Costly) Redactions

McDonald's makes much of the number of pages it has produced (over 160,000), and suggests that it has engaged in "limited redactions" of approximately 12% of the documents produced thus far.

Of the 11,227 documents produced as of October 22, 2015, 1,722 (or 15%) were withheld in their entirety as "non-responsive."  Of the 166,991 pages from "responsive" documents, over 70,000 of those pages are largely blank or are redacted in their entirety. In many instances, McDonald's has produced thousands of pages of printouts of Excel spreadsheets with nothing but a header or footer, with the contents of the document redacted. The five largest documents (by page count) in McDonald's production, MCDNLRB026910, 34923, 36478, 38025, and 39720, comprise nearly 8,300 redacted or largely blank pages.

For these reasons and all the reasons stated in the NLRB's Memorandum of Law, the NLRB respectfully requests the Court to issue an order enforcing the Subpoena.

Dated at New York, New York
October 29, 2015

   /s/ Rachel V. See
Rachel V. See
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-3848

Counsel for Applicant